# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| IN RE:<br><br>ADDIE MAE SIMMONS,<br><br>Debtor. | Case No. 15-10291<br>Chapter 13 |
| ADDIE MAE SIMMONS,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB d/b/a CHRISTIANA TRUST AS TRUSTEE FOR PNPMS TRUST II,<br><br>Defendant. | Adversary No. 21-01001 |

## WILMINGTON'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND FOR SANCTIONS

COMES NOW, Wilmington Savings Fund, FSB d/b/a Christiana Trust as Trustee for PNPMS Trust II ("Wilmington"), and files this Brief in Support of its Motion to Dismiss for lack of a real party in interest and Motion for Sanctions pursuant to 28 U.S.C. § 1927, respectfully showing this Honorable Court as follows:

### RELEVANT FACTS AND PROCEDURAL HISTORY

This adversary proceeding was filed on January 21, 2021, in an effort to strip a second priority security deed from certain real property. *See* [Doc. 1]. The security deed at issue was transferred to Wilmington after the Complaint was filed, and Wilmington intervened and substituted into the case as the sole Defendant on March 23, 2021. [Doc. 15]. The Court entered a Scheduling Order on March 25, 2021, setting discovery and dispositive motion deadlines.

1

[Doc. 18]. Within the time permitted for discovery, Wilmington served discovery requests on the Plaintiff on May 20, 2021. *See* [Doc. 21].

On June 18, 2021, shortly before discovery responses were due, Shelba Sellers, the attorney for the Plaintiff, sent the undersigned an email, attached hereto as **Exhibit "A"**, requesting an extension of time to complete discovery because "Mrs. Simmons died, and I am probating her estate with the assistance of her daughter." The undersigned assumed that Mrs. Simmons had only recently passed away, and quickly consented to the motion that was filed to extend the discovery period. *See* [Docs. 22, 23]. The Court entered a consent order doing so on July 1, 2021. [Doc. 24].

On July 7, 2021, while the undersigned was working on this matter, it was discovered that Ms. Sellers had not *recently* passed away. Rather, she died on **October 12, 2019 – nearly two years ago.** *See* https://www.westonsfuneralhome.com/obituary/ADDIE-SIMMONS (a copy of which is also attached hereto as **Exhibit "B"**). This fact came as a surprise, especially since Ms. Simmons's attorney never disclosed to the Court in the underlying bankruptcy case that Ms. Simmons had died, and even filed Change of Address Notification for Ms. Simmons on December 4, 2019, almost two months after she died. *See* [Bk. Doc. 57]. Then, on November 10, 2020 – over one year after her death, Ms. Simmons's attorney filed a Debtor's Certificate of Plan Completion and Request for Discharge that purportedly contains an original signature for Ms. Simmons, dated October 19, 2020. *See* [Bk. Doc. 72]. The document also contains a signature of Adrian W. Leeks (who is believed to be Ms. Simmons's daughter), but there is no indication of who she is or that she was trying to sign on her mother's behalf. *Id.*

In disbelief that this litigation may have been initiated by a party who has been deceased for nearly two years, the undersigned contacted Shelba Sellers, the attorney for the purported

2

Plaintiff, on July 7, 2021, to ask if the information discovered about Ms. Simmons's death was correct and notified her that if it was, Wilmington intended to move to dismiss the case. A true and correct copy of this email is attached hereto as **Exhibit "C"**. A lengthy response was received the next day, confirming that Ms. Simmons died long ago. A true and correct copy of this email is attached hereto as **Exhibit "D"**. That response also indicated that Ms. Sellers sees no issue with the fact that this case was knowingly filed on behalf of a dead person, saying things like "I don't see what the big deal is" and that she just expected this case to be "resolved . . . by default or consent order." *Id.* The response also indicates that, as of July 8, 2021 – almost two months after the discovery requests were served – no probate case had been filed. *Id.*

The Plaintiff is clearly not the real party in interest and that there is no real party in interest who can be substituted into the case. Further, because this case was intentionally filed on behalf of a long-deceased Plaintiff and disclosed only once it became clear that someone would have to verify interrogatory responses, this Court should sanction Ms. Sellers and award Wilmington its fees and costs pursuant to 28 U.S.C. § 1927.

## ARGUMENT AND CITATION OF AUTHORITY

**A.    THIS CASE SHOULD BE DISMISSED BECAUSE THERE IS NO REAL PARTY IN INTEREST THAT CAN BE SUBSTITUTED INTO THE CASE**

It is undisputed that this case was filed in the name of an individual who has been dead for nearly two years. Under Fed. R. Civ. P. 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest." A dead person is clearly not a "real party in interest." *See, e.g., In re Engle Cases*, 767 F.3d 1082, 1108-1110 (11th Cir. 2014). However, Rule 17(a)(3) dictates that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest

3

to ratify, join, or be substituted into the action." But there are limitations to this rule, and as will be shown, Rule 17(a)(3) has no application here and this case must be dismissed.

In *Engle*, the Eleventh Circuit was reviewing the dismissal of "588 personal injury cases filed on behalf of purportedly living cigarette smokers who, as it turns out, were dead at the time of filing . . . ." 767 F.3d at 1086. The district court dismissed the cases, finding them to be nullities that could never be saved because a dead person cannot file a lawsuit. *Id.* at 1104. On appeal, the Eleventh Circuit declined to address this argument and instead focused on Rules 15 (amendment of pleadings) and 17 (real party in interest). *Id.* at 1108 n.30. Based on these rules, the Court held that Rule 15 could not be used in conjunction with Rule 17 to amend a complaint to substitute the real party in interest as the plaintiff under the specific facts of *Engle*. This is because Rule 17(a)(3), regarding substitution of the real party in interest, is only "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Id.* at 1109 (quoting Fed. R. Civ. P. 17, Advisory Comm. Notes, 1996 Amend.). "Accordingly, 'most courts have interpreted . . . Rule 17(a) as being applicable only when the plaintiff brought the action [in the name of the wrong party] as a result of an understandable mistake, because the determination of the correct party to bring the action is difficult.'" *Id.* (quoting *Wieburg v. GTE Sw. Inc.*, 272 F.2d 302, 308 (5th Cir. 2001) (collecting cases)).

The attorney for the purported plaintiffs in *Engle* explained "in exceptionally broad terms" that he had collected nearly 3,000 clients for tobacco cases by 1998 and tried to remain in contact with them during the pendency of a prior class action. *Id.* at 1110. He said that some clients had been lost in the process and, when a savings statute deadline was coming up, elected to name every person he had signed up as a client by 1998, nearly a decade before the cases were

4

filed. *Id.* The Court noted that some cases were filed on behalf of smokers who dies in the mid-'90s, and no explanation was made of those plaintiffs. *Id.* Based on these facts, the Eleventh Circuit concluded that Rule 17(a)(3) was unavailable because the attorney failed to show that he made any understandable mistake or that it was difficult to determine the proper plaintiffs. *Id.* at 1114-15. Thus, the cases had to be dismissed. *Id.*

Here, the facts are arguably more egregious than *Engle*. Rather than an attorney who appeared to be simply negligent in failing to follow up with clients to confirm they were alive, this Court is faced with an attorney who intentionally filed on behalf of a person whom she knew died in 2019, apparently with the hopes that the defendant would either not respond or immediately consent to the relief being sought without asking any questions. And when she was confronted with this fact, she dug in her heels and said, "I don't see what the big deal is." *See* Ex. D. The big deal is that there is no "understandable mistake," and therefore substitution of the possible, eventual[1] real party in interest is not permitted. This case must be dismissed.

**B.    SANCTIONS ARE WARRANTED AGAINST THE ATTORNEY**

Since Ms. Sellers intentionally filed on behalf of a dead plaintiff and has displayed a dismissive attitude about it, this Court should award Wilmington its attorney's fees and costs incurred in defending this action. Under 28 U.S.C. § 1927,

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[1] "Possible" and "eventual" are used because there simply is no real party in interest at this time and it is not known if there ever will be one. There is no known probate case filed and interested parties have had nearly two years to do so.

Case 21-01001    Doc 27    Filed 07/19/21    Entered 07/19/21 10:31:59    Desc Main
Document      Page 6 of 7

The Eleventh Circuit has held that bankruptcy courts have the authority to impose sanctions under this statute. *In re Wizenberg*, 838 F. App'x 406, 412 (11th Cir. 2020).

> There are "three essential requirements" for a district court to impose sanctions under § 1927: (1) the attorney must have engaged in unreasonable and vexatious conduct; (2) this conduct must have multiplied the proceedings; and (3) the dollar amount of the sanctions must bear a financial nexus to the excess proceedings in that it may not exceed the costs, expenses, or attorney's fees incurred because of the conduct. *Amlong & Amlong*, 500 F.3d at 1239. For a sanctions award to be appropriate, "something more than a lack of merit is required" because § 1927 "was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (internal quotation marks omitted). An attorney acts in bad faith for purposes of § 1927 when he "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.*

*Lacayo v. Puerta de Palmas Condo. Ass'n Inc.*, 842 F. App'x 378, 382 (11th Cir. 2021).

Since this case cannot be saved by the substitution of the real party in interest and should have never been filed, the entire case has been unnecessary, and every action taken has been an unreasonable multiplication of the proceedings. Ms. Sellers's bad faith is evident in her e-mail response and filings in the underlying bankruptcy case. For nearly two years, Ms. Sellers has hidden the death of her client from this Court, never filing a Suggestion of Death and instead giving the impression that the Debtor moved to a new residence and physically signed a request for a discharge after her death.[2] In the present case, had Wilmington not served discovery, the fact of Ms. Simmons's death may not have been disclosed unless and until there was an evidentiary hearing requiring her testimony. If this case was resolved without discovery and only

---

[2] Although Fed. R. Bankr. P. 1016 permits a bankruptcy case to proceed after the death of a debtor, "[t]he case can only 'continue' or 'proceed' if someone is permitted to act in the bankruptcy case on behalf of the deceased debtor." *In re Inyard*, 532 B.R. 364, 368 (Bankr. D. Kan. 2015) (quoting *In re Kosinski*, No. 10-bk-28949, 2015 WL 1177691, at * 3 (Bankr. N.D. Ill. March 5, 2015)). There is no such person here who could have acted on the Debtor's behalf (since there is no probate estate), and certainly no one who was disclosed to the Court. Had the Debtor's death been disclosed, it is very possible that the underlying bankruptcy case would have been dismissed since there was nobody legally authorized to act on behalf of the Debtor.

on dispositive motions, it is possible that nobody would have ever discovered Ms. Simmons's death. Quite simply, Ms. Sellers was trying to pull a fast one and hope that nobody ever noticed that the Debtor died long before this case was filed. These litigation tactics are the epitome of bad faith, and this Court should order Ms. Sellers to pay Wilmington's attorney's fees and costs pursuant to 28 U.S.C. § 1927.

## CONCLUSION

Based on the foregoing, Wilmington respectfully requests that this Court dismiss this case for lack of real party in interest and sanction Shelba Sellers under 28 U.S.C. § 1927 by ordering her to pay Wilmington's attorney's fees and costs incurred in this case.

Respectfully submitted, this 19th day of July, 2021.

>   */s/ Bret J. Chaness*
>   BRET J. CHANESS (GA Bar No. 720572)
>   **RUBIN LUBLIN, LLC**
>   3145 Avalon Ridge Place, Suite 100
>   Peachtree Corners, Georgia 30071
>   (678) 281-2730 (Telephone)
>   (470) 508-9203 (Facsimile)
>   bchaness@rlselaw.com
>
>   *Attorney for Wilmington Savings Fund, FSB d/b/a Christiana Trust as Trustee for PNPMS Trust II*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July 2021, I caused a copy of the within and foregoing to be filed by CM/ECF, which will serve notice on all parties.

>   */s/ Bret J. Chaness*
>   BRET J. CHANESS (GA Bar No. 720572)